UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GUADALUPE PAREDES,

    Plaintiff,

STATE OF WISCONSIN,
DEPARTMENT OF HEALTH SERVICES,

    Involuntary Plaintiff,    Civil Action No.

v.

**COMPLAINT**

KENOSHA UNIFIED SCHOOL DISTRICT
NO. 1, RON SANDOVAL, SCOTT KENNOW,
WILLIAM HAITHCOCK, DAVID NAYLOR, and
KAREN WAMBOLD, each in their individual
capacities,

    Defendants.

## INTRODUCTION

1. Plaintiff, Guadalupe Paredes ("Plaintiff"), was a student in the Kenosha Unified School District No. 1 ("KUSD") in Kenosha, Wisconsin from Kindergarten until he dropped out of high school in 2015.

2. Plaintiff began to experience harassment and bullying[1] from classmates in 3rd Grade based on his failure to conform to sex stereotypes. Later, when Plaintiff understood that he is gay and when school staff and other students learned that he is gay, he began to experience harassment from classmates based on sexual orientation and his failure to conform to sex stereotypes.

3. The harassment that Plaintiff suffered was so severe that it affected his educational performance, made him physically sick, caused him to experience suicidal ideation and other

---

[1] Throughout this Complaint, the use of the word "harassment" is intended to include "bullying."

psychological conditions, resulted in psychiatric hospitalizations, and ultimately caused him to drop out of high school in 11th Grade.

4. Starting in 3rd Grade, Plaintiff and his family made repeated complaints to administrators, stating that Plaintiff was being harassed by multiple students. These administrators failed to take reasonable steps to protect Plaintiff from the hostile educational environment.

5. The Defendants have discriminated against Plaintiff on the basis of sex—specifically, his sexual orientation and failure to conform to sex stereotypes—in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.*, and on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## PARTIES

6. Plaintiff Guadalupe Paredes is an adult resident of Kenosha, Wisconsin. He was a student in the Kenosha Unified School District at all times referenced in this complaint.

7. Involuntary Plaintiff, State of Wisconsin, Department of Health Services, has responsibility for oversight and administration of the State's Medicaid program. Upon information and belief, the Medicaid program paid health claims on behalf of Plaintiff for medical care and services rendered to him as a result of the incidents which are the subject matter of this action. Medicaid is entitled to reimbursement for related paid claims if Plaintiff recovers from Defendants through a settlement or judgment, making it a proper party to this action. Plaintiff asserts no claim against the State of Wisconsin, its agencies, departments, or employees.

8. Defendant Kenosha Unified School District No. 1 (KUSD) is a public school district. KUSD is a recipient of federal funds from the U.S. Department of Education, the U.S. Department of Agriculture, and the U.S. Department of Health and Human Services and, as such, is subject to

Title IX of the Education Amendments of 1972, which prohibits sex discrimination against any person in any education program or activity receiving Federal financial assistance.

9. Defendant Ron Sandoval is an adult resident of Wisconsin. He was employed by KUSD as an Assistant Principal at Edward Bain School of Language and Art (EBSOLA) during the time that Plaintiff was a student there. He is sued in his individual capacity.

10. Defendant Scott Kennow is an adult resident of Wisconsin. He was employed by KUSD as Principal of Edward Bain School of Language and Art (EBSOLA) during the time that Plaintiff was a student there. He is sued in his individual capacity.

11. Defendant William Haithcock is an adult resident of Wisconsin. He was employed by KUSD as Principal at Harborside Academy during the time that Plaintiff was a student there. He is sued in his individual capacity.

12. Defendant David Naylor is an adult resident of Wisconsin. He was employed by KUSD as Dean of Students at Harborside Academy during the time that Plaintiff was a student there. He is sued in his individual capacity.

13. Defendant Karen Wambold is an adult resident of Wisconsin. She was employed by KUSD as Dean of Students at Harborside Academy during the time that Plaintiff was a student there. She is sued in her individual capacity.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter under 28 U.S.C. §§1331 and 1343(a)(3).

15. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. §1391(b) because the claims arose in the District, parties reside in the District, and all of the events giving rise to this action occurred in the District.

## FACTS

16. Plaintiff Guadalupe Paredes attended schools within the Kenosha Unified School District (KUSD) at all times referenced in this complaint.

17. Plaintiff is gay.

18. This action is being filed prior to Plaintiff's 20th birthday.

19. During the time that Plaintiff attended KUSD schools, both State and Federal laws required Wisconsin school districts: (a) to provide an educational environment free of pervasive sexual harassment; (b) to investigate complaints or incidents of harassment; and (c) to take appropriate action to protect the affected student from further harassment.

20. During the time that Plaintiff attended KUSD schools, District policies designated administrators such as the individual Defendants to receive complaints or reports of harassment, to investigate those complaints or reports, and to take appropriate action following the investigation.

21. During the time that Plaintiff attended KUSD schools, District policies required any staff person—including administrators—who received a complaint or otherwise became aware of harassment to investigate each incident and prepare a written record of the investigation.

22. A request was made of KUSD on Plaintiff's behalf to provide all documents of any kind regarding him in its possession pursuant to the Wisconsin Public Records Law, Wis. Stats. §19.35. KUSD did provide numerous documents regarding Plaintiff, but its Public Records response did not include any documents referencing investigations or actions taken in connection with the incidents of harassment described in this complaint.

23. **2007-2008 School Year – 3rd Grade:** Plaintiff attended the Edward Bain School of Language and Art (EBSOLA). Defendant Scott Kennow was the Principal and Defendant Ron Sandoval was Assistant Principal.

24. Plaintiff did not think of himself as gay during 3rd Grade. However, he was not interested in sports or in wearing athletic clothing like other boys. He often wore bright colors including pink.

25. During 3rd Grade, various students harassed Plaintiff by calling him "fag" and "gay." They also physically attacked him.

26. On two different occasions during 3rd Grade, Plaintiff's mother contacted Sandoval to complain about the harassment and identified specific students. She told Sandoval that these students were calling Plaintiff "fag" and "gay." Sandoval told Plaintiff's mother that he would conduct an investigation and, if appropriate, would do something to stop the harassment.

27. There is no written record of any investigation into the complaints made by Plaintiff's mother during this time period.

28. The harassment continued throughout the remainder of 3rd Grade.

29. **2008-2009 School Year – 4th Grade:** Plaintiff remained at EBSOLA. Kennow was still the Principal and Sandoval was Assistant Principal.

30. During 4th Grade, various students harassed Plaintiff by calling him "fag" and "gay." They also physically attacked him.

31. Plaintiff met with Sandoval approximately ten times during the school year to complain about harassment and identified specific responsible students. Each time, he told Sandoval that these students were shoving him or striking him while calling him "gay," "fag," and "faggot." Each time, Sandoval told Plaintiff that he would do something to stop the harassment. There was no change in the behavior of the other students following the meetings with Sandoval.

5

32. Twice during 4th Grade, Plaintiff's mother contacted Sandoval to complain about harassment. She told him that other students were shoving or striking Plaintiff and calling him "fag" and "gay." She identified specific responsible students. Defendant Sandoval told Plaintiff's mother that he would conduct an investigation and, if appropriate, would do something to stop the harassment. There was no change in the behavior of the other students after Plaintiff's mother complained to Sandoval.

33. Following one of the harassment incidents during recess, Plaintiff went to the school office and met with Sandoval. He told Sandoval that once again he had been physically attacked by other students and called "gay" and "faggot." Plaintiff was crying and requested to stay inside during recess. Sandoval told him that everyone must go outside during recess and that there would be no exceptions. Trying to explain how much he was hurting, Plaintiff told Sandoval that he was attracted to boys but did not want to be bullied or harassed because of that. Sandoval's appearance and demeanor changed when Plaintiff said he was attracted to boys. Sandoval seemed uncomfortable and no longer made any eye contact with Plaintiff. He told Plaintiff to go back outside for recess. On this occasion, Sandoval did not say that he would do something to stop the harassment.

34. Shortly after this meeting with Sandoval, Kennow summoned Plaintiff and met with him. He said that Plaintiff should no longer go to Sandoval with complaints and should contact Kennow directly because Sandoval did not feel comfortable with Plaintiff's kind.

35. Plaintiff felt terrible after the meeting with Sandoval. He felt even worse after Kennow told him that Sandoval would not be helping him anymore because he had told Sandoval that he was attracted to boys.

6

Case 2:18-cv-01440-JPS   Filed 09/14/18   Page 6 of 16   Document 1

36. There is no written record of any investigation into the complaints made by Plaintiff or his mother during this time period.

37. On many Sunday nights during 4th Grade, Plaintiff felt sick and vomited. He begged his mother to allow him stay home from school. She was not aware of the seriousness of the harassment during 4th Grade and usually sent him to school every day.

38. Plaintiff did contact Kennow several times to complain after their meeting and there would be somewhat less harassment for a time, but the harassment continued throughout 4th Grade and was particularly vicious during the last week of school.

39. **2009-2010 School Year – 5th Grade:** Plaintiff remained at EBSOLA. Kennow was still the Principal and Sandoval was Assistant Principal.

40. The bullying/harassment continued during 5th Grade. Various students harassed Plaintiff by calling him "fag" and "gay." They also physically attacked him.

41. There was an incident outside the school where students pushed Plaintiff down and kicked him repeatedly while he was curled up on the ground. He then went into the school. He was crying and asked a staff person to call his mother.

42. Plaintiff's mother came to the school following this incident and met with Kennow. Sandoval was present but did not say anything. Plaintiff's mother identified specific students who were responsible for the harassment. Kennow's solution was to have Plaintiff follow a prescribed route that would minimize his contact with the students who were harassing him, and, if that did not work, then Plaintiff's mother could remove him from school before dismissal time to avoid those students in the halls. There is no written record of an investigation into this incident.

43. The harassment continued throughout 5th Grade. After learning that Kennow would not do anything to stop the perpetrators and that he was expected to solve the problem himself by hiding

7

from them, Plaintiff no longer went to Kennow for help. He skipped classes where he would be harassed. On numerous occasions, Plaintiff hid in various places within the school instead of attending certain classes so that he could avoid the students who harassed him.

44. Plaintiff was hospitalized for inpatient psychiatric treatment during January of 2010; the harassment was a substantial cause of the hospitalization.

45. **2010-2011 School Year – 6th Grade:** EBSOLA served students only through 5th Grade, and so Plaintiff moved to another KUSD school, Paideia Academy, for 6th Grade.

46. Most of the students who bullied and harassed Plaintiff at EBSOLA also moved to Paideia and resumed the harassment.

47. Various student, including one student who was the worst perpetrator of harassment, cornered Plaintiff in the school restroom and told him that he should kill himself because he is gay. Plaintiff reported these incidents to the Paideia Principal. These incidents caused Plaintiff to avoid using the school restroom and to wait until he could go at home.

48. Various students, including the one specific student, sent messages to Plaintiff's Facebook page saying that he should kill himself. Plaintiff deleted that Facebook account and started another, but the same students sent the same message to the new page. Plaintiff's mother reported the Facebook incidents to the Principal and identified the students.

49. There is no written record of any investigation into the incidents that Plaintiff and his mother reported, but apparently the Paideia Principal did something because there was somewhat less harassment during the remainder of 6th grade. That one specific student remained the worst perpetrator.

50. **2011-2012 School Year – 7th Grade:** Plaintiff remained at Paideia Academy.

51. There was another Facebook incident. A student sent Plaintiff a message saying that he was sick and should kill himself because the world would be better off without him. This was reported to the Paideia Principal, but the other student was not disciplined. There is no written record of any investigation.

52. The same students who had harassed Plaintiff during 6th Grade continued to call Plaintiff "gay", "fag," and "faggot" during 7th Grade. They continued to corner him in the restroom and so he continued to avoid the school restrooms. The student who was the worst perpetrator during 6th Grade continued to be the worst perpetrator during 7th Grade.

53. Plaintiff felt hopeless because of the continuing harassment. He no longer cared about himself and his appearance. He stopped showering and started sleeping a great deal.

54. **Summer of 2012:** The Paideia Principal knew that her students would be transitioning because the school was changing and merging with Harborside Academy. The Principal was concerned about Plaintiff and contacted the administrators at Harborside, Defendants David Naylor and William Haithcock. The Paideia Principal told them about the past harassment.

55. Based on the information he received from the Paideia Principal, Naylor arranged for an older student to serve as a mentor and tutor for the Plaintiff to ease his transition to the new school program. However, the older student did not want to work with Plaintiff and so Naylor served as Plaintiff's mentor and tutor during the Summer between 7th Grade and 8th Grade.

56. **2012-2013 School Year – 8th Grade:** Paideia Academy merged with Harborside Academy. Most Paideia Students attended the merged school which was located on the upper floors of Reuther High School. Defendant William Haithcock was Principal, Defendant David Naylor was a Dean of Students, and Defendant Karen Wambold was a Dean of Students.

9

57. Plaintiff's mother spoke with both Naylor and Haithcock about the harassment that Plaintiff had experienced in the past and was reassured that they would address it at Harborside.

58. The student who had been the worst perpetrator of harassment during 6th and 7th Grades also attended Harborside. Plaintiff and this student were given similar schedules and were in most classes together. This student continued to be the worst perpetrator, but other students also continued to harass Plaintiff.

59. Plaintiff's mother spoke with Naylor several times about the ongoing harassment and identified those students. There is no written record of any investigation into these complaints.

60. During one conversation about the ongoing harassment, Naylor told Plaintiff's mother that he brought harassment on himself by acting gay and telling other students that he is gay.

61. Early in 2013, Plaintiff reported to Wambold that he was being bullied by several students, including the same student who had been the worst perpetrator in previous school years. There is no written record of any investigation into this complaint.

62. In February of 2013, Plaintiff received text messages from the student who was the worst perpetrator. That student sent text messages calling Plaintiff a faggot and telling him to kill himself. Plaintiff's mother and father went to Harborside Academy to complain. They met with Haithcock and Wambold. They told these administrators about the history of harassment and the recent text messages from that student. They expressed their concern that students were continuing to harass Plaintiff. There is no written record of any KUSD investigation into their complaints.

63. The Harborside administrators' response to the text message incident was to assign Plaintiff and the student who exchanged texts with Plaintiff to work on a poster project together or there would be a 3-day suspension. Plaintiff could not bring himself to work on a project and be alone with that student. As a result, Plaintiff was ordered to serve a 3-day suspension.

10

64. The harassment continued throughout the year and the student involved in the February 2013 text incident continued to be the worst perpetrator.

65. **2013-2014 School Year – 9th Grade:** Plaintiff transferred from Harborside, which was a separate school program located within Reuther Central High School, and actually attended the Reuther High School program.

66. Most of the students who had harassed Plaintiff remained at Harborside, which was in the same building, and he continued to encounter them. Some of these students spread a rumor that the administrators at Harborside had kicked Plaintiff out because he was gay.

67. The harassment continued but Plaintiff no longer complained to administrators because he believed it was hopeless.

68. **2014-2015 School Year – 10th Grade:** Plaintiff continued to attend Reuther Central High School.

69. The harassment continued during 10th Grade but Plaintiff no longer reported it because he believed it was hopeless.

70. Plaintiff completed all of his 1st Quarter classes with grades of C, C+, C and B, but his academic performance declined significantly after that. He failed to complete or get credit in several classes.

71. Reuther Central High School staff became concerned about Plaintiff and conducted a Collaborative Student Intervention meeting on 03/09/2015 to address his academic problems. It resulted in an Intervention Accommodation Plan to address the academic issues.

72. Shortly after the Intervention meeting, Plaintiff was hospitalized for inpatient psychiatric treatment. The years of harassment were a major cause of the hospitalization.

11

Case 2:18-cv-01440-JPS Filed 09/14/18 Page 11 of 16 Document 1

73. Plaintiff's academic performance did not improve when he returned to school after the psychiatric hospitalization. He failed to complete or get any credit for several classes.

74. **2015-2016 School Year – 11th Grade:** Plaintiff transferred to Tremper High School in the hope of getting a fresh start; however, mental health issues prevented him from being successful.

75. Plaintiff stopped attending school before the end of First Semester during 11th Grade. He failed every class and never returned to school. He had only completed about half of the credits necessary for graduation.

76. The harassment that occurred during 3rd through 10th Grades was a substantial cause of Plaintiff's failure to graduate from high school.

77. The sex-based harassment described above in paragraphs 23 to 76 was severe, pervasive, and objectively offensive.

78. The sex-based harassment described above in paragraphs 23 to 76 deprived Plaintiff of access to the educational opportunities or benefits provided by KUSD.

79. As a direct result of the hostile educational environment created by Defendants' deliberately indifferent response to the pervasive harassment described above in paragraphs 23 to 76, Plaintiff has suffered and continues to suffer psychological damage, emotional distress, and damage to his reputation.

80. Plaintiff received psychiatric treatment, including medication, and he also received counseling from numerous professionals regarding the psychological damage he suffered from the Defendants' actions.

81. Plaintiff has also suffered the loss of future educational opportunities and future earning capacity because he did not graduate from high school as a result of the Defendants' actions.

12

Case 2:18-cv-01440-JPS   Filed 09/14/18   Page 12 of 16   Document 1

## LEGAL CLAIMS

## FIRST CAUSE OF ACTION

### Violation of Title IX of the Education Amendments of 1972 by Defendant Kenosha Unified School District

81. Title IX of the Education Amendments of 1972 ("Title IX") states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. §1681(a); *see also* 34 C.F.R. §106.31 (Department of Education Title IX regulations); 7 C.F.R. §15a.31 (Department of Agriculture Title IX regulations); 45 C.F.R. §86.31 (Department of Health and Human Services regulations). Title IX's prohibitions on sex discrimination extend to "any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient" of Federal funding. 34 C.F.R. §106.31; 7 C.F.R. §15a.31; 45 C.F.R. §86.31.

82. Title IX's prohibition on discrimination "on the basis of sex" encompasses discrimination based on an individual's sexual orientation, including nonconformity to sex-based stereotypes.

83. Conduct specifically prohibited under Title IX includes, *inter alia*, treating one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit or service; providing different aid, benefits or services in a different manner; denying any person any such aid, benefit or service; or otherwise subjecting any person to separate or different rules of behavior, sanctions or other treatment. 34 C.F.R. §106.31; 7 C.F.R. §15a.31; 45 C.F.R. §86.31.

84. As a Federal funding recipient, KUSD, including the academic, extracurricular, and other educational opportunities provided by the KUSD, is subject to Title IX's prohibitions on sex-based discrimination against any student.

13

85. The sex-based harassment described above in paragraphs 23 to 76 was so severe, pervasive, and objectively offensive that it deprived Plaintiff of educational opportunities provided by KUSD.

86. Defendant KUSD had actual knowledge of the harassment described in paragraphs 23 to 76.

87. Defendant KUSD's failure to respond appropriately to the numerous complaints referenced in paragraphs 23 to 76 resulted in Plaintiff, on the basis of his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

88. Defendant KUSD's policies and practices constituted disparate treatment of gay students and students who do not conform to gender stereotypes.

89. Plaintiff has been injured as a direct and proximate result of Defendant KUSD's discriminatory conduct.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §1983 Based on Deprivation of Plaintiff's Rights Under the Equal Protection Clause of the Fourteenth Amendment by the Individual Defendants

90. Under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, discrimination on the basis of sex, including sexual orientation and nonconformity to sex-based stereotypes, is presumptively unconstitutional and is, therefore, subject to heightened scrutiny.

91. Defendants Sandoval, Kennow, Haithcock, Naylor and Wambold ("Individual Defendants") had sufficient power and authority to take remedial action to correct the sex-based harassment experienced by the Plaintiff.

92. The Individual Defendants explicitly and intentionally treated Plaintiff differently on the basis of sex by failing to implement State laws and KUSD policies regarding complaints and reports of bullying and harassment that would have protected Plaintiff from ongoing harassment.

93. The Individual Defendants explicitly and intentionally treated Plaintiff differently on the basis of sex by failing to take other appropriate steps to protect Plaintiff from ongoing harassment.

94. The Individual Defendants were deliberately indifferent to the substantial likelihood that Plaintiff's rights would be violated on the basis of sex by failing to implement State laws and KUSD policies regarding complaints and reports of bullying and harassment that would have protected Plaintiff from ongoing harassment.

95. The Individual Defendants were deliberately indifferent to the substantial likelihood that Plaintiff's rights would be violated on the basis of sex by failing to take other appropriate steps to protect Plaintiff from ongoing harassment.

96. The Individual Defendants' discrimination against Plaintiff is not substantially related to any important governmental interest and is not rationally related to any legitimate governmental interest.

97. All of the Individual Defendants' actions and failures to act were under color of state law.

98. The Individual Defendants are liable for the violations of Plaintiff's Fourteenth Amendment rights under 42 U.S.C. §1983.

99. Plaintiff has been injured as a direct and proximate result of the Individual Defendants' discriminatory conduct.

100. All of the Individual Defendants' actions and failures to act were within the scope of their employment with KUSD, and KUSD is liable for any damages awarded by the Court.

101. TRIAL BY JURY IS DEMANDED.

WHEREFORE, Plaintiff, Guadalupe Paredes, requests judgment as follows:

A. Award compensatory damages in an amount that would fully compensate Plaintiff for the damages that have been caused by the Defendants' conduct;

B. Determine the subrogation rights of Involuntary Plaintiff, State of Wisconsin, Department of Health Services;

C. Award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

D. Order such other and further relief as this Court deems just and equitable.

Dated: September 14, 2018

McNALLY PETERSON, S.C.
*Attorneys for Plaintiff Guadalupe Paredes*

/s/Robert Theine Pledl
By: Robert Theine Pledl (SBN 1007710)
By: Mark A. Peterson (SBN 1016259)
By: Daniel A. Peterson (SBN 1093343)
1233 North Mayfair Road, Suite 200
Milwaukee, WI 53226-3255
Telephone: (414) 257-3399
Facsimile: (414) 257-3223
Email: rpledl@mcpetelaw.com
mpeterson@mcpetelaw.com
dpeterson@mcpetelaw.com